IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **Alexis Carlito-Garcias** § | | |
| **as** § | | |
| **Heir of Christopher Lowe** § | | |
| § | | |
| **Plaintiff,** § | | **Civil Action No.** |
| § | | |
| VS. § | | **4:20-CV-330-P** |
| § | | |
| **City of Fort Worth, Texas; Scott Smith;** § | | |
| **Christopher Golden; Mitchell Miller;** § | | |
| **Taylor Stephens; Daniel Pritzker;** § | | |
| **Andrew Scharf; and Hans Fellhauer,** § | | |
| § | | |
| **Defendants.** § | | |

### AFFIDAVIT OF SUSAN E. HUTCHISON

Before me, the undersigned authority, came on to be deposed and under oath stated as follows:

"My name is Susan E. Hutchison. I am over the age of twenty-one (21) and am in all respects qualified to make this Affidavit. The information contained herein is within my personal knowledge and is true and correct.

"I am the attorney representing Alexis Carlito-Garcias as Heir of Christopher Lowe.

"The information available to Plaintiff without discovery is limited to body camera footage and the disciplinary records resulting from an Internal Affairs investigation. Without discovery, Plaintiff cannot access the Internal Affairs investigation itself, any training records reflecting the training of the individual officers that would address their subjective knowledge regarding medical emergencies and the specific knowledge and observations of the individual officers involved. The Motion for Discovery submitted by Plaintiff is not sought for delay or harassment, but so that

Plaintiff may legitimately present this Court with sufficient information to sharpen the presentation of the issues for the Court's consideration.

"Despite the fact that Defendants' motions to dismiss are supposed to be based upon the facts as pleaded by Plaintiff, each Defendant inappropriately inserts factual allegations of their own in their motions—facts that are either disputed by Plaintiff or unobtainable by Plaintiff without discovery. It is very clear that these Defendants are, and will be, presenting information to the Court in motions for summary judgment that is beyond the body camera footage and beyond what Plaintiff has had access to review.

"1. Smith

"(the following page numbers referenced are from Smith's Motion to Dismiss)

"[T]he terrifying ordeal Mr. Lowe inflicted upon the occupants of the house where the incident took place." [p. 3] [Defendant acknowledges in his own motion that this is a fact that he added and that it is not contained in Plaintiff's complaint]. Plaintiff disputes this allegation based upon the body camera footage showing the home occupants standing around calmly talking within feet of Mr. Lowe. However, based upon the apparently unsupported assertion, Plaintiff anticipates that Defendant will offer additional factual information in his summary judgment currently not obtainable by Plaintiff without discovery.

"Smith characterizes Lowe's actions as "able to walk with the two officers down the driveway towards the street." [p. 3]. Plaintiff requests the opportunity to fully address with the officers the extent to which assistance was provided and their characterizations of Lowe's abilities at the time.

"Lowe alleged that he was sick and dying "apparently" in the presence of Defendant Smith. [p. 3]. Plaintiff anticipates that each of the Defendant officers, including Smith, is going

to deny seeing or hearing certain actions of Lowe during this entire process. Other than what is seen and heard on the body camera footage, without the ability to depose the officers, Plaintiff has no way to know what they are going to admit and deny seeing or hearing and no way to test with the other officers and witnesses at the scene the accuracy of those representations.

" 'Plaintiff contends that other officers (not Smith) were discussing the transport of Lowe to the hospital before he was discovered unresponsive in the backseat of the patrol vehicle." [p. 4]. This is not an accurate representation of Plaintiff's pleadings. First of all, Plaintiff did not exclude Defendant Smith from the discussion. Secondly, after Smith filed his motion to dismiss, Plaintiff amended her complaint to clarify that "[a]ll of the named Defendants discussed and agreed as a group on the scheme...." (Plaintiff's First Amended Complaint, p. 6, par. 27). However, based upon Smith's insertion of his own facts into his motion that he was not part of the discussion [p. 4], Plaintiff anticipates that he will include such factual assertion in his motion for summary judgment and Plaintiff has no way to ascertain or test such assertion without his deposition and those of the other officers at the scene.

"Smith alleges on p. 9—10 that it was "other officers" that took Lowe into custody and that "Lowe allegedly either had trouble walking or was perceived as feigning trouble walking." It is clear from Smith's motion, as well as the motions of the other individual officers, that they intend to dispute which officers observed what conduct that that they all perceived that Lowe was "feigning" illness. Plaintiff cannot test those assertions without the ability to conduct discovery and, in particular, depose the officers at the scene.

"Defendant Scott makes specific factual assertions in section III of his Answer "Factually Specific Assertion Of Immunity Pursuant To Schultea" [ECF 39, P. 8] that obviously he would

not make if he did not allege that they were true.  Yet they are factual assertions that Plaintiff disputes and should be tested through appropriate discovery.

"In paragraph 3.09, Defendant Smith states that "Lowe told officers he was sick, but he did not display signs or symptoms Officer Smith recognized as a serious medical condition." This gratuitous statement is directly contradicted by Mr. Smith's briefing of the assembled officers that Mr. Lowe was likely overdosing, that his eyes were "bugged out," that he was stating he could not breathe and he was unable to walk unassisted.  It is further contradicted by the fact that the response of the assembled group was a determination to take Mr. Lowe to the hospital and not to the jail.

"In paragraph 3.09, Defendant Smith states that "Lowe did tell officers he could not stand up or walk, but he was able to do both with assistance." This statement mischaracterizes both the body camera footage and the findings of the Internal Affairs Investigation, and presents a factual issue that Plaintiff cannot test or fully address without the depositions of the officers at the scene.

"In paragraph 3.09, Defendant Smith states that "[w]hen Lowe stumbled, it was after his pants had fallen to his ankles and appeared to restrict Lowe's ability to walk."  As stated directly above, this is a mischaracterization of the facts and fails to mention Lowe's pleas that he was "sick," "dying" and "can't breathe."  This statement mischaracterizes both the body camera footage and the findings of the Internal Affairs Investigation, and presents a factual issue that Plaintiff cannot test or fully address without the depositions of the officers at the scene.

"In paragraph 3.10, Defendant Smith states that "[w]hen Lowe indicated to Officer Smith that Lowe could not breathe, it appeared to Officer Smith that Lowe was breathing."  This is a very tone-deaf comment in light of all of the in-custody deaths where a detainee has stated that they could not breathe as they died in custody.  It is not a new or recent phenomenon and these officers were fully aware that a person who is becoming more and more short of breath can say "I can't

breathe" while they are losing the ability to breathe—as demonstrated by the fact that Mr. Lowe died thereafter. This is yet another assertion outside of the pleadings that will apparently be asserted in a dispositive motion that should be tested through discovery.

"In paragraph 3.11, Defendant Smith states that "[b]ased on his experience, Officer Smith believed that Lowe's behavior and condition was consistent with someone not wanting to go to jail, and who may have been intoxicated, but who was not in need of emergency or immediate medical care." Once again, this is a statement that should be addressed through discovery of the officers at the scene and their knowledge and training at the time of this incident.

"In paragraph 3.13, Defendant Smith states that he "did not see or hear anything during his interaction with Lowe that caused him to think Lowe was experiencing serious medical needs until near the end of the incident when he saw other officers performing CPR on Lowe." Again, this statement is contradicted by the body camera footage and the findings of the Internal Affairs Investigation as reflected in the disciplinary action quoted above and should be addressed through appropriate discovery.

"2.    Golden & Miller (references are to their brief in support of motion to dismiss)

"These Defendants allege that at "Lowe was walking of his own accord." [p. 3]. The extent to which Lowe "walked" of his own accord is highly disputed, is an issue that Defendants will most certainly address in a motion for summary judgment and must be tested through depositions of the officers [and arguably, witnesses] at the scene.

"These Defendants further allege that Lowe was exhibiting "passive resistance" that was designed to frustrate the arrest process. (citing cases where such was found in order to support their position—p. 3). It is apparent from the motions to dismiss that Defendants intend to try and convince this Court that Lowe was exhibiting "passive resistance" as opposed to signs of physical

distress.  They should not be allowed to make such blanket assertions without addressing their knowledge, experience and training on recognizing signs of medical distress and differentiating alleged "resistance."

"Defendants appear to take the position that if Lowe was not "bleeding, vomiting, unconscious, convulsing, seizing, incontinent or foaming at the mouth," they would have no obligation to obtain medical care. [p. 4].  Plaintiff avers that such a position is not only completely untenable, but in contravention of these officers' own knowledge and training.  However, in order to provide information to this Court on these officers' "awareness" of what would put them on notice of a serious medical need, Plaintiff would need to obtain discovery from the City regarding their training, the General Orders in place at the time and the depositions of the officers individually regarding their level of knowledge and understanding.

"Miller and Golden assert that the Plaintiff's allegations in her First Amended Complaint do not establish that "defendants observed any physical symptoms not consistent with any other intoxicated or mentally unstable, passively resistant, malingering, suspect they may confront." [p. 4].  The extent of their observations and how those compare with the other situations they mention is information only within the knowledge of Defendants and Plaintiff has no way to access such information without their depositions.

"Miller and Golden assert that "Lowe again displayed no obvious signs of any serious medical need."  There is no question that these Defendants will assert the same conclusion in a motion for summary judgment. Plaintiff has no way to address with these Defendants their awareness of signs of a serious medical need other than  through discovery of their training records and their depositions.

"3. Pritzker & Fellhauer (references are to their brief in support of motion to dismiss)

"These Defendant allege (again, factual allegations outside of Plaintiff's pleadings) that Lowe "appeared to either be suffering from a mental illness or intoxicated." [p. 1]. The only way for Plaintiff to address Defendants' subjective understandings under the circumstance is to obtain their training records from the City and questions the Defendants in depositions.

They further allege that "[a]s Lowe sat in the back seat of a patrol car, the officers discussed transporting him to the hospital for a mental health evaluation, which by procedure includes an assessment of any need for medical care." [p. 1]. This highlights a very important reason for allowing discovery in this case. The Defendants variously contest what was said by whom during the discussion about what to do with Mr. Lowe. The only way for Plaintiff to obtain such information is through discovery and depositions.

"The Defendants allege at p. 2 of their brief that "there is nothing about Lowe's conduct that suggests that Lowe, who had been banging a pipe against a gate without other obvious conditions, was about to suddenly die." The extent of the individual Defendants' training and observations with respect to serious medical need is information that is not available to Plaintiff without discovery in this case.

"With regard to the discussion about taking Lowe to the hospital, Defendants alleged that "[d]uring this conversation, Officer Smith allegedly discussed Lowe's behavior, symptoms and complaints. However, Plaintiff does not allege what medical symptoms were specifically discussed." [p. 3]. This is information that Plaintiff can only obtain through discovery in this case.

"4.      Stephens (references are to Stephens' motion to dismiss)

"At the outset, it should be noted that Stephens, through a "footnote" [p. 2, n. 3] offers a substantial amount of alleged "factual" information that is not set forth in Plaintiff's First Amended

Complaint and about which Plaintiff has no ability to obtain information other than through discovery in this case.

"Stephens further alleges that she should be able to "rely upon the conduct and reports from the other officers who were on the scene before she arrived, to draw the inference, as they did, that there was not a substantial risk of harm to Mr. Lowe that required immediate medical attention." [p. 16]. Aside from the fact that this allegation does not assume Plaintiff's well pleaded facts as true and attempts to introduce facts outside of the pleadings, it is another clear indication that Defendant will assert that she relied upon representations made by other officers. Plaintiff has no way of ascertaining what those will be alleged to be without being able to conduct discovery in this case.

"5.     Scharf (references are to Stephens' motion to dismiss)

"Defendant Scharf attempts to bolster his actions by attempting to introduce an "apparent mental illness" on the part of Mr. Lowe, as well as information reported to 911 and allegedly a family that "felt terrorized." These are all allegations outside of the Plaintiff's pleadings and thus, inappropriate for a motion to dismiss. However, they are indicative of the direction that Defendant will attempt to take in a summary judgment motion.

"Scharf further blatantly introduces facts outside of the pleadings in his motion to dismiss at footnote 3, which even begins "[a]lthough omitted from plaintiff's complaint....." Each Defendant, including Scharf, has blatantly ignored the rules for assessing a 12(b)(6) motion to dismiss and inserted, or attempted to insert, their own alleged facts into the equation.

"Scharf further asserts an "absence of obvious physical symptoms" at p. 1. This is a highly contested fact issue that will obviously be asserted by Defendant at the summary judgment stage

and which Plaintiff should be able to explore through discovery, including the depositions of the officers at the scene.

"Like the other Defendants, Scharf alleges that Lowe was "walking of his own accord" at times. [p. 3]. The extent to which Lowe was "walking and talking," while to a large extent is reflected on body camera footage, is also susceptible to the officers' representations, which Plaintiff can only access through their depositions as well as potentially training materials from the City.

"Like the other Defendants, Scharf attempts to excuse his conduct by casting aspersions on Mr. Lowe and accusing him of "faking" medical distress. [p. 3]. This kind of accusation by the Defendants must be explored through not only cross examination but through obtaining the City's records regarding these officers' training and the applicable General Order.

"As outlined above, all of the officers contest the extent to which any or all of them observed particular behavior on the part of Lowe, understood what they heard or observed or distinguished what they heard and observed from situations where someone was faking it or simply intoxicated. However, in order to provide information to this Court on these officers' 'awareness' of what would put them on notice of a serious medical need, Plaintiff would need to obtain discovery from the City regarding their training, the General Orders in place at the time and the depositions of the officers individually regarding their level of knowledge and understanding. For example, the officers' insistence that they can presume that a detainee is 'faking' illness to avoid jail surely is addressed during training and presumably through the department's General Orders. Plaintiff must be able to test their assertions, which will carry through to their summary judgment motions, and present to the Court a full picture upon which to decide whether there are material issues of fact.

Further Affiant sayeth not.

_____
SUSAN E. HUTCHISON

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, to certify which witness my hand and official seal on the 21st day of July 2020.

_____
NOTARY PUBLIC, STATE OF TEXAS

JULIE KRISTI JONES
My Notary ID # 6263526
Expires February 17, 2021