IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ALEXIS CARLITO-GARCIAS, AS HEIR OF CHRISTOPHER LOWE,  §§§§§ Plaintiff, §§§ VS. § CITY OF FORT WORTH, ET AL., §§§§ Defendant. | NO. 4:20-CV-330-P |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motions of Defendants Scott Smith ("Smith"), Christopher Golden ("Golden"), Mitchell Miller ("Miller"), Taylor Stephens ("Stephens"), Daniel Pritzker ("Pritzker"), Andrew Scharf ("Scharf"), and Hans Fellhauer ("Fellhauer") (collectively, "Movants") to dismiss. The Court, having considered the motions, the response of Plaintiff, Alexis Carlito-Garcias, as heir of Christopher Lowe ("Lowe"), the replies, the record, and applicable authorities, finds that the motions should be **GRANTED**.

### BACKGROUND

On April 10, 2020, Plaintiff filed her complaint in this action, alleging claims against Movants and the City of Fort Worth ("City"), which employed Movants as police officers. Doc.[1] 1. Movants filed motions to dismiss, Docs. 17, 19, 22, 26, 28, 31, and

---

[1]The "Doc. __" reference is to the number of the item on the docket in this action.

Plaintiff filed an amended complaint in response. Doc. 35. The amended complaint is Plaintiff's operative pleading.

In the amended complaint, Plaintiff alleges: On July 26, 2018, Smith was dispatched to a prowler call. When he arrived, he saw Lowe sitting near the front of a white SUV parked in a driveway. Lowe was holding an object and banging it on a gate or metal bar. Doc. 35, ¶ 14. None of the people standing around knew Lowe. Smith told them that since Lowe was not really hurting anything, Smith was going to get back up. No one expressed any concern. *Id.* ¶ 15. Miller and Golden arrived. When Lowe discarded the object, the officers moved to take him into custody. Lowe did not resist. *Id.* ¶ 16. Lowe followed a command to roll onto his stomach. He told officers that he was sick. *Id.* ¶ 17. Officers commanded Lowe to stand and he said that he could not. Smith yelled at Lowe to stand and Miller and Golden yanked Lowe up by his cuffed hands. *Id.* ¶ 18. Smith noted that Lowe's eyes were "bugged out." Golden and Miller walked Lowe down the driveway. He slumped down but was yanked back up and told to stand and walk. Lowe again said he was sick. He was dragged a few more steps and told officers he was sick and dying. *Id.* ¶ 19. Officers once again yanked Lowe to his feet and he cried out, "wait, wait, wait, wait, wait." Miller told Lowe that if he fell again, he would just let him fall. Lowe stated, "I can't breathe" and "wait, wait, wait, wait, wait." Golden's response was "don't pull that shit." *Id.* ¶ 20. Pritzker and Fellhauer arrived. Lowe told all of the officers that he could not breathe. Lowe slumped forward, crying out "aarghhhhhhh" and saying he could not breathe. Miller responded, "yeah, you can." Lowe again said he was dying. *Id.* ¶ 22.

2

Pritzker took over for Miller and helped force Lowe into the back of a patrol car. Lowe cried out and an unidentified officer told Lowe that if he spit on him, the officer would put his face in the dirt. *Id.* ¶ 25. Scharf and Stephens arrived and all of the officers stood in a group talking. Smith told them about Lowe's behavior, symptoms of drug overdose, and that Lowe had complained of an inability to breathe. *Id.* ¶ 27. During the discussion, it was determined that Golden would transport Lowe to John Peter Smith Hospital ("JPS") for an emergency mental evaluation. Pritzker advised Golden to withhold information that the officers believed Lowe was under the influence of narcotics. Stephens advised to take Lowe "straight up and don't say anything else." None of the movants objected. *Id.* ¶ 28. Lowe began to bang his head. Fellhauer and Golden told Lowe that they would pepper spray him if he did not stop. Lowe told them he needed to go to the hospital. Golden told Lowe they needed to know his name before they could transport him to the hospital. They obtained Lowe's identification but did not call an ambulance or transport Lowe to the hospital. *Id.* ¶ 29. Almost twenty minutes after Smith had encountered Lowe, Lowe was discovered unresponsive in the back of the patrol car. An ambulance was called. Lowe was pronounced dead after he was transported to JPS. *Id.* ¶ 31. Lowe died of acute cocaine intoxication. *Id.* ¶ 32. Each officer was disciplined by the Acting Chief of Police. *Id.* ¶¶ 34–40.

   Plaintiff sues the Movants under 42 U.S.C. § 1983 for violations of Lowe's rights under the Fourth and Fourteenth Amendments, saying that each was deliberately

indifferent to Lowe's serious medical needs. She also says that they restrained Lowe's liberty in violation of the Fourth Amendment.[2]

In addition to her amended complaint, Plaintiff filed a Rule 7(a) reply, Doc. 43, and appendix in support, Doc. 44, in response to Smith's answer asserting qualified immunity. Doc. 39. The appendix includes a thumb drive containing videos and the disciplinary report pertaining to Smith. Doc. 44. In her response to the motions to dismiss, Plaintiff quotes from the disciplinary reports regarding the other Movants, Doc. 49, which contain substantially similar language to the Smith report.

Each of the Movants alleges that Plaintiff has failed to sufficiently plead the claims against him or her. Each also contends that he or she is entitled to qualified immunity.

## LEGAL STANDARDS

### A. Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege

---

[2]Plaintiff did not respond to the motions to dismiss on this ground, thus abandoning it.

4

legal conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." *Anderson v. U.S. Dep't of Housing & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). In sum,

> a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law.

5

*Id.* at 528–29. Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8. *Iqbal*, 556 U.S. at 676; *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

In considering a motion to dismiss for failure to state a claim, the court may consider documents attached to the motion if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The court may also refer to matters of public record. *Papasan v Allain*, 478 U.S. 265, 268 n.1 (1986); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). This includes taking notice of pending judicial proceedings. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 481 n.1 (5th Cir. 2003). And, it includes taking notice of governmental websites. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005).

**B.     Qualified Immunity**

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns

6

on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639–40. In *Harlow*, the Court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276–80 5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants

are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730–31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343, 341. This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level

8

of generality, but must be particularized to the facts of the case. *Id.* at 552. Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

## C.     Deliberate Indifference to Medical Needs

The Eighth Amendment proscribes the cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An arrestee's complaint of deliberate indifference to medical needs arises under the Fourteenth Amendment. *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001). For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Rather, the plaintiff must show that the defendant acted with subjective deliberate indifference. *Hare v. City of Corinth*, 74 F.3d 633, 648–49 (5th Cir. 1996) (discussing *Farmer*).

9

## ANALYSIS

Smith is the only officer who was present during the entire encounter with Lowe. Smith was dispatched to a prowler call. He arrived to find Lowe sitting near the front of a white SUV, holding what appeared to be a small pipe and banging it lightly on a gate or metal bar. Doc. 35, ¶ 14. The resident of the house was standing on the porch watching Lowe. Another person standing in the yard began conversing with Smith. Smith noted that Lowe was not really hurting anything at the moment and that Smith was going to get some backup. Smith inquired and no one knew who Lowe was. Lowe made no verbal threats or threatening actions and no one standing around made any expressions of terror regarding him. *Id.* ¶ 15.

Miller and Golden arrived next. When Lowe discarded the object he was holding, they grabbed Lowe and Smith yelled at Lowe to stand up. Lowe did not refuse any commands, make any threats, resist or struggle at any time. *Id.* ¶¶ 16–18. Lowe was directed by Smith to walk. Smith noted that Lowe's eyes were bugged out. Golden and Miller walked Lowe down the driveway. He slumped down but was yanked back up and told to stand and walk. Lowe said that he was sick. He was dragged a few more steps and told officers he was sick and dying. *Id.* ¶ 19. Lowe cried out, "wait, wait, wait, wait, wait." Miller told him if he fell again Miller would let him fall. Lowe stated, "I can't breathe" and "wait, wait, wait, wait, wait." Golden said, "Don't pull that shit." *Id.* ¶ 20.

Pritzker and Fellhauer arrived. Lowe told all of the officers that he could not breathe. All five officers moved Lowe toward the patrol car. Lowe slumped forward, crying

"aarghhhhhh" and "no, I can't breathe." Miller told him, "yeah, you can." *Id.* ¶ 22. Pritzker took over for Miller and helped put Lowe in the back of the police car. Lowe cried out and an unidentified officer told Lowe that if he spit on him, the officer would put his face in the dirt. *Id.* ¶ 25.

Scharf and Stephens arrived and all of the officers stood in a group talking to each other. Smith told all officers assembled "about Mr. Lowe's behavior, symptoms of drug overdose and that he had complained of his inability to walk or breathe." *Id.* ¶ 27. It was determined that Golden would transport Lowe to JPS for an emergency mental detention. Pritzker advised Golden to withhold information that the officers believed Lowe was under the influence of narcotics. Stephens advised to take Lowe "straight up and don't say anything else." *Id.* ¶ 28. Lowe began to bang his head against the interior of the patrol vehicle. Fellhauer and Golden went to talk with Lowe. Golden told Lowe that if he kept banging his head, Golden would use pepper spray and it would get worse. Lowe told them he needed to go to the hospital. Golden told Lowe they needed to know his name before they could take him to the hospital. Lowe's identification was obtained but no ambulance was called. *Id.* ¶ 29.

Almost twenty minutes[3] after Smith encountered Lowe, Lowe was discovered unresponsive in the back of the patrol car. An ambulance was called. Lowe was pronounced

---

[3] Smith's disciplinary report reflects that Lowe was found unresponsive approximately 13 minutes after being placed in the patrol vehicle. Doc. 44, tab 2, Appx 3. The record does not reflect how long it took an ambulance to arrive after being called. Plaintiff does not allege when Movants subjectively knew that they were required to call an ambulance.

11

dead after he was transported to JPS. *Id.* ¶ 31. Lowe died of acute cocaine intoxication. *Id.* ¶ 32. Fellhauer, Golden, Miller, Pritzker, Smith, and Stephens were disciplined by the Acting Chief of Police for "neglect of duty," "acts showing a lack of good moral character," "conduct prejudicial to good order," and "violation of an applicable Fire or Police Department rule, directive, general or special order." *Id.* ¶¶ 34, 35, 36, 37, 39, 40. Scharf was disciplined for "neglect of duty" and "violation of an applicable Fire or Police Department rule, directive, general or special order." *Id.* ¶ 38.

The court has reviewed the materials contained in the appendix and considered them as part of Plaintiff's pleading even though they were filed in response to Smith's answer. The only conceivably pertinent part of the videos is footage from Smith's body cam reflecting that Lowe said, "ahhhhh," and Smith said, "get up." Doc. 44, tab 1. The court is not certain as to what was intended to be shown by the videos. The Stevens and Scharf videos show them driving to the scene. The Golden video does not appear to be relevant. The videos do not establish, much less support Plaintiff's claims.

Also attached to the appendix is the disciplinary report regarding Smith. *Id.*, tab 2. That Smith may have violated local custom or protocol does not establish that he violated Lowe's constitutional rights; nor does it affect Smith's right to qualified immunity. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009); *Graham v. Hodge*, 69 F. Supp. 3d 618, 629 (S.D. Miss. 2014). The disciplinary report does not set forth specific facts sufficient to show that Smith had subjective knowledge of facts from which the inference of a substantial risk of serious harm could be drawn or that Smith actually drew

12

that inference. And, to the extent that it might be required, as discussed infra, the report certainly does not give any reason to believe that Smith subjectively intended any harm to Lowe to occur. The same applies to all of the disciplinary reports.[4]

Taking the facts alleged as true, as the court must at this stage of the proceedings, Plaintiff has failed to show that any of the Movants was deliberately indifferent to Lowe's serious medical needs. She has at most shown that: when Smith arrived, Lowe was lightly banging a pipe on a gate or metal bar; Lowe was not hurting anything; no one expressed concern for safety; Lowe did not struggle when officers took him down; he responded "ok, ok" and "yes sir" to commands; Lowe told officers he was sick; Smith told Lowe to walk and he did, although at points other officers held him up; Smith noted that Lowe's "eyes [were] bugged out;" Lowe slumped but regained his footing; Lowe stated, "I can't breathe" and "wait, wait, wait, wait, wait;" Golden told him not to pull that shit; Lowe again cried that he could not breathe and Miller told him he could; Lowe told officers he was dying; Golden and Pritzker put Lowe in the back of a patrol car; Lowe cried out again and an unidentified officer told Lowe that if he spit on him, the officer would put Lowe's face in the dirt; the officers talked to each other while Lowe sat in the police car; it was determined that one would take Lowe to JPS for an emergency mental detention; Pritzker advised

---

[4] As best the court can surmise from the reports, City has a policy that requires that an ambulance must be called if a detainee says he is sick or cannot breathe or is dying, without regard to the facts or circumstances known to the officer. Of course, failure to comply with that policy does not mean that a detainee's constitutional rights have been violated.

Golden not to disclose that they believed Lowe was under the influence of narcotics[5]; Lowe began to bang his head against the interior of the patrol car; Fellhauer and Golden talked to Lowe and Golden threatened to pepper spray him if he continued banging his head; Lowe told them he needed to go to the hospital; almost twenty minutes after Smith encountered Lowe, officers discovered Lowe unresponsive in the back of the patrol car and called an ambulance. Lowe died of acute cocaine intoxication. The officers were disciplined by City. The disciplinary reports concluded: "[A] person requesting medical assistance or reporting medical distress should certainly receive assistance . . . [The officer in question] has exhibited a blatant disregard for the policies and procedures of the Fort Worth Police Department."

    Plaintiff makes a number of conclusory allegations regarding Lowe's obvious and noted distress, but she does not allege facts to show that any of the Movants was aware that Lowe had overdosed on cocaine and needed immediate medical attention. Plaintiff does not describe Lowe's physical appearance or any symptoms of his alleged distress except for his own statements that he could not breathe, that he was sick, and that he was dying. Plaintiff does not say that Lowe was vomiting, foaming at the mouth, convulsing or seizing, or choking, or incoherent, or uncommunicative or anything else that would indicate a serious medical need. She does not allege what medical symptoms movants specifically

---

[5] That Movants may have discussed getting out of work, i.e., hospital guard detail, does not establish deliberate indifference. Movants clearly intended to take Lowe to JPS. His condition, whatever it was, would surely have been just as obvious to trained medical personnel, no matter what Movants said.

discussed. Plaintiff does not allege that any drugs or drug paraphernalia were found. Nor does she explain why movants should have known that Lowe was in imminent danger of dying. Lowe had been able to walk, both with and without help; he said he could not breathe, but continued to talk, responding "ok, ok" and "yes sir." One officer believed Lowe was faking, because he told Lowe "not to pull that shit." Another officer cautioned Lowe not to spit on him, indicating that Lowe had already done so. Lowe banged his head on the interior of the police car, but apparently stopped when officers told him to stop.

Plaintiff's premise is apparently that a police officer is required to call an ambulance if a detainee requests one, e.g., by saying he is sick or cannot breathe or dying. However, she does not cite any case so holding or make any attempt to show that such was the clearly established state of the law at the time Movants encountered Lowe. *See Thompson*, 245 F.3d at 458 (plaintiff must have case law from this circuit handed down in time to be clearly established at the time of the events in the case being considered). In fact, she does not cite any case involving similar facts. The closest she comes is *Dyer*, 964 F.3d 374. Doc. 49 at 6. There, officers had custody of a delusional detainee who was severely harming himself by violently slamming his head against the patrol car over forty times. 964 F.3d at 384. The officers knew the detainee had taken LSD, that he was exhibiting erratic behavior, that he was incoherent and screaming, that he was in a drug-induced psychosis, and that he had a visible and serious head injury. *Id.* at 377–79. The cause of death was craniocerebral trauma. *Id.* at 379.

15

The cases Plaintiff cites to establish the constitutional obligation to summon medical care do not concern fact situations remotely related to the one at issue here. For example, *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752 (5th Cir. 2001), concerned the case of an inmate who committed suicide. The prison psychiatrist was granted qualified immunity. *Jones v. Tex. Dep't of Crim. Justice*, 880 F.3d 756 (5th Cir. 2018), concerned knowing interferences with prescribed medical care for a diabetic. *Thompson*, 245 F.3d 447, concerned failure to provide medical care for delirium tremens suffered in jail, which was clearly required by prior cases.

Finally, Plaintiff attempts to meet her burden by distinguishing cases Movants have cited, contending among other things that they apply the wrong test. For the last twenty years, the Fifth Circuit has described the deliberate indifference test as having three elements: (1) the defendant was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the defendant actually drew that inference; and, (3) the defendant's response indicates that he subjectively intended the harm to occur. *See, e.g.*, *Sanchez v. Young Cty.*, 866 F.3d 274, 280 (5th Cir. 2017); *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011); *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009); *Thompson,* 245 F.3d at 458–59. Recently, two different panels have noted the inconsistency in the circuit's opinions, some requiring the third element, others reciting only the first two prongs. *See Dyer v. Houston*, 964 F.3d 374 (5th Cir. 2020); *Garza v. City of Donna*, 922 F.3d 626 (5th

Cir. 2019). *Garza* points out that neither of the court's two *en banc* decisions[6] requires proof that officials subjectively intend that harm occur. 922 F.3d at 636, n.6. Of course, *Hare* does refer to "deliberate indifference'" as "the subjective intent to cause harm," 74 F.3d at 649, and *Williams* notes that *Farmer's* subjective test "isolates those who inflict punishment." 797 F.3d at 281 (quoting *Farmer*, 511 U.S. at 839). Neither *Dyer* nor *Garza* discusses what a reasonable officer should have known the law to be in this regard. Movants contend that all three elements must be pleaded and proved; Plaintiff contends that the third element is not part of the test. The court need not decide. Movants are entitled to qualified immunity unless Plaintiff shows that each of them had subjective knowledge of a substantial risk of serious harm to Lowe and responded with deliberate indifference. *Hare*, 74 F.3d at 650. This she has failed to do. At most, she has shown negligence or gross negligence, which is insufficient to support a finding of deliberate indifference. *Thompson*, 245 F.3d at 459.

## CONCLUSION

For the reasons discussed herein,

The court **ORDERS** that Movants' motions to dismiss be, and are hereby, granted; that Plaintiff take nothing on her claims against Movants; and, that such claims be, and are hereby, **DISMISSED WITH PREJUDICE**.

---

[6] *Hare v. City of Corinth,* 74 F.3d 633 (5th Cir. 1996) (en banc), and *Williams v. Hampton*, 797 F.3d 276 (5th Cir. 2015) (en banc).

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the claims against Movants.

**SIGNED** October 30, 2020.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE